## THE DAILY TELEGRAM COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52500.   Promulgated March 17, 1936.

*A. Calder Mackay, Esq.*, and *Arthur McGregor, Esq.*, for the petitioner.

*Eugene Harpole, Esq.*, for the respondent.

OPINION.

Van Fossan: It is the contention of the petitioner that the transaction, whereby the petitioner transferred certain of its assets to the Press-Telegram Publishing Co., was a nontaxable transaction within the meaning of section 203 of the Revenue Act of 1924. If the petitioner is to be sustained, this case must be brought within the provisions of subsections (b) (3)[1] and (e) (2),[2] or subsections (b) (4)[3] and (d) (1)[4] of that section.

On the facts it is apparent that subsections (b) (4) and (d) (1) are not applicable. The stock of the Press-Telegram Publishing Co. received by the petitioner and the Long Beach Press Building Co. in exchange for property was not substantially in proportion to the interest of each of these companies in the property prior to the exchange.

Subsections (b) (3) and (e) (2) are applicable only if it appears that the exchange was made by a corporation, a party to a reorganization and in pursuance of the plan of reorganization. The term "reorganization" is defined in subsection (h) (1)[5] of section

---

[1] Sec. 203. (b) (3) No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

[2] (e) If an exchange would be within the provisions of paragraph (3) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

\*      \*      \*      \*      \*      \*      \*

(2) If the corporation receiving such other property or money does not distribute it in pursuance of the plan of reorganization, the gain, if any, to the corporation shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property so received, which is not so distributed.

[3] Sec. 203. (b) (4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

[4] Sec. 203. (d) (1) If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

[5] Sec. 203. (h) (1) The term "reorganization" means (A) a merger or consolidation (including the acquisition, by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

203, and the petitioner rests its case upon the applicability of clause (A) of that subsection, which provides that the term "reorganization" means "a merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation)." No contention is made that either of the remaining clauses, (B), (C) or (D), is applicable in this case.

The facts show that the Press-Telegram Publishing Co., in return for 32 percent of its own stock, 32 percent of the stock of the Long Beach Press Building Co., the assumption of certain liabilities, and cash, acquired all of the petitioner's assets except certain real estate and some worthless bonds and the right to any amount collected on advertising accounts receivable in excess of $100,000. If the properties so transferred constituted substantially all of the petitioner's properties, the transaction was a reorganization as contended by the petitioner.

Of the assets retained, the right to any amount collected on advertising accounts receivable in excess of $100,000 needs no consideration since the proof shows that the advertising accounts did not produce $100,000 and indicates that no excess was in fact anticipated when the assets were transferred.

The term "substantially all" is a relative term, dependent on the facts of any given situation. It is obvious that what might in one case, with a certain total of property involved, constitute substantially all of such property, might be but a small part of the total property involved in another case. In the present case a reading of the instrument in question leaves one with the impression that petitioner undertook to transfer substantially all of its properties. The evidence is that the agreement was substantially carried out and that thereafter petitioner had only "a few thousand dollars in real estate properties and some worthless bonds." This was the testimony of one of the two owners of petitioner, who was also a party to the agreement. Giving this expression its normal meaning and considering the total amount of property involved, we have concluded and found as a fact that the new corporation acquired substantially all of the properties of petitioner. Accordingly the transaction constituted a "reorganization" under the definition contained in section 203 (h) (1) (A). It follows that the transaction falls under the provisions of section 203 (b) (3) and (e) (2) and gain is to be recognized in an amount not in excess of the sum of money and the fair market value of "such other property" received.

Of the consideration received by petitioner, the cash amounted to $47,058.56. The "other property" consisted of (1) 341 shares of the common capital stock of the Long Beach Press Building Co., (2) the assumption of petitioner's accounts payable in the amount of $103,-

662.65, and (3) the assumption of notes of two of petitioner's stockholders in the sum of $100,000.

We have found as a fact from the evidence that the 1,600 shares of stock of the Press-Telegram Publishing Co. had a fair market value on September 1, 1924, of $230,000 and that the 341 shares of stock of the Long Beach Press Building Co. had no fair market value on that date. As to the accounts assumed, it is contended by the respondent that in addition to the sum of $103,662.65 the petitioner's note for $20,000 was also assumed by the Press-Telegram Publishing Co. This contention is not supported by the proof. Although such a note was specifically mentioned in the contract of August 27, 1924, on the record it must be concluded that this item was included in the sum of $78,913.34, which is designated as notes payable and which constitutes a portion of the sum of $103,662.65 previously mentioned. The last mentioned amount constituted part of the consideration received by petitioner.

Under the terms of the agreement, the Press-Telegram Publishing Co. assumed responsibility for the payment of notes of stockholders of the petitioner in the amount of $100,000. Petitioner's counsel argues that it received nothing from such assumption and that this amount should not be included in the ascertainment of the consideration for its assets. This argument is not persuasive. The sum of $100,000 representing notes of petitioner's stockholders, which were assumed, was clearly made a part of the consideration paid by the Press-Telegram Publishing Co., in the acquisition of petitioner's newspaper and constituted a part of the consideration received by the petitioner. The record is almost bare of any evidence as to this item. It is not explained how the note came into existence or what interest petitioner had in it. Petitioner had the burden and opportunity of proving that the Commissioner erred. This it has failed to do. We are unable to say as a matter of law that the assumption of this note did not constitute gain to petitioner. *Frank G. Warden,* 23 B. T. A. 24.

In determining petitioner's gain respondent found a basic value on March 1, 1913, for the assets transferred by petitioner of $193,261.46. In so doing he made no allowance for petitioner's library, circulation list, and good will. The evidence does not justify any revision of the values found by respondent for the several items included in his computation. We have found, however, that the fair market value on March 1, 1913, of petitioner's library, circulation list, and good will which respondent omitted was $140,000. The sum of $140,000, therefore, should be added to the basic figure of $193,261.46 as determined by respondent, making a total of $333,261.46 as the March 1, 1913, basis for determining gain on the transfer on September 1, 1924.

The remaining issue involves a bad debt deduction. In the agreement of August 27, 1924, the petitioner guaranteed the accounts receivable which it transferred to the Press-Telegram Publishing Co. up to the amount of $106,000. Assuming that some of such accounts could not be collected, it at once set up on its books a reserve for bad debts in the amount of $42,808.34, and in the year 1924, charged against the reserve the sum of $10,671.96, representing the excess of the advertising accounts receivable over the $100,000 guaranteed and the amount to which the petitioner would have been entitled if all of the accounts could have been collected. In 1925 a further charge of $27,548.13 was made against the reserve. The whole amount of the reserve was deducted by the petitioner on its return and was disallowed in full by the respondent in his determination of the deficiency. The record shows that the accounting practice of the petitioner theretofore had been to charge off bad debts as and when worthlessness was ascertained and, further, that the excess of advertising accounts receivable over $100,000 was ascertained to be worthless in 1924. The deduction claimed by the petitioner is allowed as to the sum of $10,671.96, which was charged off in the taxable year.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

TURNER, dissenting: The petitioner rests its claim of reorganization on the allegation that substantially all of its assets were acquired by the Press-Telegram Publishing Co. within the meaning of clause (A) of section 203 (h) (1) of the Revenue Act of 1924. In my opinion, however, it has failed to prove that substantially all of its assets were so acquired. The essential facts, if known at all, are necessarily within the knowledge of petitioner, its officers, and stockholders, but the proof on this point is limited entirely to the statement of S. S. Conklin that the property retained consisted of "a few thousand dollars in real estate properties and some worthless bonds." It is said that Conklin was one of the two owners of petitioner and was also a party to the agreement. From this it is inferred that it was competent for him to express an opinion as to value. While that may be true, it is also to be remembered that Conklin, being one of the parties in interest, is seeking to invoke one of the exempting clauses of the income tax statute to his own benefit. If he was sufficiently informed to determine the value of the real estate and bonds, it would have been a simple matter to have supplied the facts from which we could have formed an opinion as to whether the properties were substantial or negligible.

It is stated in the majority opinion that the "term 'substantially all' is a relative term, dependent on the facts of any given situation" and that "what might in one case, with a certain total of property involved, constitute substantially all of such property, might be a small part of the total property involved in another case." With this statement I am heartily in accord. It gives the strongest support to the view here expressed, that the petitioner has not given us "facts" in this "given situation" which will show on which side of the equation this case falls. If the petitioner is to receive the benefit sought, which is the nonrecognition of the gain from the exchange of property, it has the burden and duty to give us sufficient facts to show that the transaction in question meets the test of the statute. "A few thousand dollars in real estate" is indefinite and that expression used by one individual and in connection with one transaction rather than another might well indicate a very substantial amount. We have no way of knowing what the situation would be in this case if we had the facts before us which the petitioner had the burden of presenting if it expected to prevail in its contention that substantially all of its properties were acquired by the Press-Telegram Publishing Co.

In my opinion, any finding in this case that substantially all of petitioner's assets were acquired by the Press-Telegram Publishing Co. must be based entirely upon an assumption as to what was in the mind of the witness rather than upon facts presented and from which a conclusion might be drawn.

McMahon and Leech agree with this dissent.